| | |
|---|---|
| 1 | MUNGER, TOLLES & OLSON LLP |
| 2 | BRADLEY S. PHILLIPS, SBN 85263 |
|   | brad.phillips@mto.com |
| 3 | 350 South Grand Avenue, 50th Flr. |
| 4 | Los Angeles, California 90071 |
|   | (213) 683-9100 |
| 5 | |
| 6 | Attorneys for Plaintiffs |
|   | JUSTICE ACTION CENTER and |
| 7 | IMMIGRANT DEFENDERS LAW |
| 8 | CENTER |
| 9 | *Additional counsel on following page* |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTICE ACTION CENTER and IMMIGRANT DEFENDERS LAW CENTER, | CASE NO.:  2:21-cv-7592 |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| U.S. CUSTOMS AND BORDER PROTECTION, | |
| U.S. OFFICE OF REFUGEE RESETTLEMENT, | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, and | |
| U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION, | |
| Defendants. | |

JUSTICE ACTION CENTER
KAREN C. TUMLIN, SBN 234691
Karen.Tumlin@justiceactioncenter.org
ESTHER H. SUNG, SBN 255962
Esther.Sung@justiceactioncenter.org
JANE BENTROTT, SBN 323562
Jane.Bentrott@justiceactioncenter.org
P.O. Box 27280
Los Angeles, California 90027
(323) 316-0944


IMMIGRANT DEFENDERS LAW CENTER
MUNMEETH SONI, SBN 254854
meeth@immdef.org
HANNAH COMSTOCK, SBN 311680
Hcomstock@mmdef.org
CAITLIN ANDERSON, SBN 324843
caitlin@immdef.org
634 South Spring Street, 10th Flr.
Los Angeles, California 90065
(213) 634-0999

## INTRODUCTION

1. Plaintiffs Justice Action Center ("JAC") and Immigrant Defenders Law Center ("ImmDef") (collectively, "Plaintiffs") bring this action against Defendants United States Department of Homeland Security ("DHS"), the United States Immigration and Customs Enforcement ("ICE"), the United States Customs and Border Protection ("CBP"), the United States Office of Refugee Resettlement ("ORR"), the United States Department of Health and Human Services ("HHS"), and the United States Centers for Disease Control and Prevention ("CDC") (collectively, "Defendants") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. As further alleged below, Plaintiffs have sought, pursuant to FOIA requests ("FOIA Requests") information from Defendants about their policy of immediately turning away asylum seekers and expelling them back to Mexico or to their home countries, pursuant to 42 U.S.C. § 265, purportedly to prevent the spread of COVID-19 (the "Title 42 policy"). The Title 42 policy is directly relevant to Plaintiffs' missions to advance the civil and human rights of immigrants to the United States and to represent clients affected by the administration's policies and practices.

3. Plaintiffs seek information on Defendants' policies and actions regarding children who are apprehended at the border in the company of adults, particularly when either the child or the adult states that they are related to each other. Specifically, Plaintiffs seek to understand the scope and extent of the administration's policies that separate families when a child's primary caregiver is a relative who is not a parent or legal guardian. Of great concern, children who seek asylum are being separated from their primary caregivers in ways that significantly impair the chance of their reunification simply because the shape of their family is deemed "non-traditional." The requested information relates to an ongoing humanitarian crisis created by Defendants' Title 42 policy and is of immediate interest to the public and to Plaintiffs.

4. Plaintiffs served their FOIA requests on Defendants on July 16, 2021. Despite the clear statutory requirement that an agency respond to a FOIA request within

20 working days, and despite Plaintiffs' subsequent inquiries, Defendants have not notified Plaintiffs whether and when they will comply with Plaintiffs' FOIA Requests or produced any documents in response to Plaintiffs' FOIA Requests. Defendants have not claimed that the requested information is subject to any FOIA exceptions or privileges or advanced any other reason why it should not be disclosed.

5. Plaintiffs seek to compel Defendants to comply with their obligations under FOIA and promptly produce the requested information.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

7. Because Defendants failed to comply with the requirements to respond, as set forth in 5 U.S.C. § 552(a)(6)(A), Plaintiffs have constructively exhausted their administrative remedies and are entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

8. Venue is proper in the Central District of California under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

9. Plaintiff JAC is a 501(c)(3) nonprofit corporation incorporated under the laws of California and headquartered in Los Angeles, California. JAC is dedicated to advancing the civil and human rights of immigrants in the United States through a combination of impact litigation, communications, and digital strategies. It provides related support to select partner nonprofit organizations that have immigrant members or that provide direct legal services to immigrant communities. JAC employs an innovative model that advances the rights of immigrant communities by connecting cutting-edge impact litigation and storytelling.

10. JAC has developed a multi-pronged approach to use information obtained through FOIA requests to educate the public and further the aforementioned goals. First, JAC uses the expertise and experience of its own staff to target members of the public

most affected by the information. For example, JAC advises organizations providing legal services to children and families apprehended at the border and has also represented such children in litigation to advocate for their statutory and constitutional rights. JAC will use its own social media and website resources to publish the information received through this request. Second, JAC partners with well-established immigration advocacy groups to ensure dissemination to key communities, such as Families Belong Together and FWD.us. Finally, JAC works with newspaper and broadcast media to report on the released information. Using this multi-pronged approach, JAC will educate the public with the information it obtains through this FOIA request.

11. Plaintiff ImmDef is a 501(c)(3) nonprofit corporation incorporated under the laws of California and headquartered in Los Angeles, California. Its mission is to achieve universal representation for immigrants in removal proceedings. ImmDef is the largest legal services provider in Southern California and serves Southern California's most marginalized immigrant and refugee communities through legal education, community empowerment, strategic litigation, and direct representation before USCIS, the immigration courts, and the Ninth Circuit. ImmDef provides full-scale legal representation, case management support, and other legal services to more than 900 unaccompanied children annually.

12. The Children's Representation Project is ImmDef's largest direct representation program and ImmDef uses information obtained through the FOIA process to assist in the representation of, and advocacy for, our clients and impacted communities. This information is also used for purposes of education, advocacy, and public outreach. The Children's Representation Project represents children who become unaccompanied after Defendants' policies separate them from their relative caregivers, including aunts and grandparents, at the border.

13. Defendants DHS and its components ICE and CBP are agencies of the United States of America under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1).

14. Defendant HHS and its components ORR and CDC are agencies of the United States of America under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1).

15. DHS and its components (USCIS and ICE) and HHS and its components (ORR and CDC) are the federal agencies with possession, custody, and control of the requested records and are responsible for responding to Plaintiffs' FOIA Requests.

## STATUTORY FRAMEWORK

16. FOIA, 5 U.S.C. § 552, mandates disclosure of records held by a federal agency, in response to a request for such records by a member of the public, unless records fall within certain narrow statutory exemptions.

17. As the Supreme Court has recognized, "the basic purpose of [FOIA] is 'to open agency action to the light of public scrutiny.'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Such scrutiny improves the public's understanding of governmental operations and thus enables a vibrant and functioning democracy.

18. Accordingly, Plaintiffs submitted their FOIA Requests to DHS, ICE, CBP, HHS, ORR, and CDC to educate the public on the federal government's policies and actions regarding children who are apprehended at the border in the company of adults, particularly when either the child or the adult states that they are related to each other.

## FACTUAL ALLEGATIONS

A. **BACKGROUND**

19. Section 265 of Title 42 is a little-known provision of U.S. health law that ostensibly permits the Surgeon General to suspend the entry of individuals to the United States when necessary to prevent the spread of a communicable disease. Former President Trump used the ongoing COVID-19 pandemic as a pretext for closing the border to asylum seekers and authorizing their categorical and summary expulsion under Title 42.

20. Under President Biden, Defendants have continued former President Trump's policy of Title 42 expulsions. A federal court recently found that this policy is "likely unlawful" and preliminarily enjoined the Biden administration from enforcing it

against certain types of families. *Huisha-Huisha et al. v. Gaynor et al.*, No. 1:21-cv-00100-EGS (D.D.C. Sept. 16, 2021) Memorandum Opinion at 57. Not only is the administration currently appealing this ruling in an effort to keep the Title 42 policy in place, but the ruling also does not affect many of the types of families at issue in Plaintiffs' requests, because the order is limited to situations where the child is accompanied by a parent or legal guardian. Defendants' treatment of families with minor children under Title 42—particularly children apprehended with a non-parental family member, such as an aunt or uncle, grandparent, or adult cousin or sibling—has raised serious concern among immigration and child-welfare advocates. These children are being forcibly and often irreparably separated from their families merely because their caregiver may be an aunt or a grandfather or older sibling rather than a parent or legal guardian. In many cases this non-parental caregiver is the only caregiver the minor child has.

21. An "unaccompanied alien child" (herein, an "unaccompanied child") is defined as a minor under 18 who has no legal immigration status in the United States and no accompanying parent or legal guardian. 6 U.S.C. § 279(g)(2).

22. Because children apprehended with a non-parental family member are legally classified as "unaccompanied children," they have historically been separated from their non-parental family member(s) upon apprehension and taken into the custody of Defendant ORR. Before the adoption of the Title 42 policy (as well as the Trump Administration's Migrant Protection Protocols ("MPP")), the non-parental family member was usually taken into the custody of Defendant ICE and placed in immigration proceedings, which include the opportunity to seek asylum and the possibility of being released or paroled into the United States to await an immigration-court hearing. Children who were separated from their non-parental family members had the opportunity to be released from ORR custody to the care of a vetted U.S. sponsor, which could involve reuniting with the family member from whom they had been separated.

23. Under former President Trump's Title 42 expulsion policy, all asylum seekers, including both children who were not accompanied by an adult and children in the company of adults, were categorically returned to Mexico or their home countries. President Biden has continued this expulsion policy but has exempted unaccompanied children from expulsion. As a result, children apprehended with a non-parental family member, who continue to be classified as "unaccompanied children," are still involuntarily separated from their family members. And those family members, rather than being taken into ICE's custody and placed in immigration proceedings in the U.S., are still being expelled back to Mexico or their home countries, prolonging the family separation.

24. Not only is this prolonged separation traumatic for these children and their family members, it can also mean that, if such a child is eligible for release from ORR custody to a sponsor in the United States, the child may not be released to the most suitable sponsor because the family member who brought the child and may be the child's primary caregiver has been expelled from the country, with no ability to enter the U.S. and care for the child. It can also mean that some children have no available sponsor at all and can be placed in long-term foster care or deported back to their home country, both of which exacerbate and prolong the child's trauma and family separation. Ultimately, this policy causes immeasurable and irreparable harm by imposing an exceedingly narrow and unrealistic view of what a family looks like.

25. For example, Plaintiff ImmDef serves a three-year-old child from Honduras who was separated from his grandfather while seeking asylum. The young boy's grandfather was expelled to Mexico while the toddler was processed as "unaccompanied." They are still separated.

26. These policies are still separating families today. Thousands of asylum seekers, primarily from Haiti are currently living in a camp in Del, Rio, Texas. On information and belief, Defendants are currently applying the Title 42 policy to separate thousands of Haitian unaccompanied minor children from family members, while those

family members are expelled to Haiti despite the unstable and unsafe conditions in that country, which have been recognized by the U.S. government's recent actions to authorize Temporary Protected Status for Haitian refugees.

27. The information Plaintiffs seek is of tremendous public importance. Plaintiffs and the public have a right to know what Defendants' policies and practices are with respect to children who are apprehended at the border in the company of adults, particularly when either the child or the adult states that they are related to each other, and how many children and families have been subjected to those policies and practices. Plaintiffs have a right to know if Defendants' policies cause prolonged family separation simply because the size or shape of the family does not meet what Defendants prioritize as the "traditional" definition of a family.

**B.  PLAINTIFFS' FOIA REQUESTS**

28. On July 16, 2021, Plaintiffs submitted the FOIA Requests to DHS, ICE, CBP, HHS, ORR, and CDC, seeking ten categories (each including sub-categories) of requested records. A true and correct copy of the July 16, 2021, letter setting forth Plaintiffs' FOIA Requests, is attached hereto as Exhibit A and incorporated herein by reference.

**C.  DEFENDANTS' FAILURE TO RESPOND**

29. Pursuant to FOIA, within twenty business days, excluding public holidays, of receipt of Plaintiffs' FOIA Requests—that is, no later than August 13, 2021—Defendants were required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor" and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances," an agency is allowed to take one extension of time, not to exceed ten business days. 5 U.S.C. § 552(a)(6)(B)(i). Here, any such extension would have expired on August 27, 2021.

30. On July 16, 2021, DHS acknowledged receiving Plaintiffs' FOIA Requests and assigned them Request Number 2021-HQFO-01222.

31. On July 16, 2021, ICE acknowledged receiving Plaintiffs' FOIA Requests and assigned them Request Number 2021-ICFO-37783.

32. On July 16, 2021, CBP acknowledged receiving Plaintiffs' FOIA Requests and assigned them Tracking Number CBP-2021-085029.

33. On July 16, 2021, HHS acknowledged receiving Plaintiffs' FOIA Requests and assigned them Case Number 2021-01442-FOIA-OS.

34. On July 21, 2021, Plaintiffs received a letter from CDC expressly stating that the agency would not comply with its statutory obligation to respond to the FOIA Requests within twenty or, at most, thirty working days. CDC stated that it would "require more than thirty working days to respond" to the FOIA Requests. This letter also puzzlingly stated that Plaintiffs' fee waiver request was "granted" but also noted that Plaintiffs were considered a "commercial requestor" and that the CDC "may charge reduced fees instead of waiving all fees." A true and correct copy of this letter is attached as Exhibit B.

35. On July 28, 2021, Plaintiffs received two letters from DHS. One letter notified Plaintiffs that their request for expedited treatment had been denied; the other letter notified Plaintiffs that their request for a fee waiver had been "conditionally" granted. In both letters, DHS purported to invoke a ten-day extension to respond to Plaintiffs' FOIA Requests pursuant to 6 C.F.R. Part 5 § 5.5(a). *See* 5 U.S.C. § 552(a)(6)(B)(i) (allowing an extension of no more than ten working days). That extension would have given DHS until August 27, 2021, in which to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor" and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). True and correct copies of the letters from DHS are attached hereto as Exhibits C and D.

36. On August 23, 2021, Plaintiffs sent the following message by email to each of the Defendants, except CBP:

> On Friday, July 16, 2021, we delivered to you, on behalf of our clients the Justice Action Center and the Immigrant Defenders Law Center, requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. sec. 552. Pursuant to Section 552 (a)(6)(A), you were required, within 20 days (excluding Saturdays, Sundays, and legal public holidays) after receipt of those requests, to determine whether to comply with them and to immediately notify us of that determination, the reasons for it, and various rights our clients have under FOIA. That deadline was Friday, August 13, 2021, but we have not received any communication from you with respect to any determination or the reasons for it. Please provide us with the required notice within 5 business days – no later than Monday, August 30, 2021. If we do not receive such notice by that date, we will treat your failure as a denial of our requests and proceed accordingly.

37. On August 24, 2021, Plaintiffs received an email from DHS expressly stating that the agency would not comply with its statutory obligation to respond to the FOIA Requests within twenty or, at most, thirty working days. DHS stated that "[its] general expectation is that we will be able to send you a final response within 3-4 months" and that "there may be additional delays." That same day, Plaintiffs sent an email to DHS, pointing out that FOIA allows an agency to extend the twenty-day period specified in 5 U.S.C. § 552(a)(6)(A) for no more than ten days. On September 3, 2021, Plaintiffs received an email from DHS stating that circumstances "often make it impossible to respond within the law's timeframe"—thus admitting that the agency regularly violates the law—and reiterating that the agency's "best estimate" was that it would be able to respond in "three to four months."

38. On August 25, 2021, Plaintiffs received an email from CDC stating that "in unusual circumstances, an agency can extend the twenty-working day limit to respond to a FOIA [request]" but failing to acknowledge that such extension must be no more than ten working days. *See* 5 U.S.C. § 552(a)(6)(B)(i).

39. On August 26, 2021, Plaintiffs received an email from ICE purporting to invoke a ten-day extension to respond to Plaintiffs' FOIA Requests pursuant to 6 C.F.R. Part 5 § 5.5(a). *See* 5 U.S.C. § 552(a)(6)(B)(i) (allowing an extension of no more than ten working days). That extension would have given ICE until August 27, 2021, in which

to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor" and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). A true and correct copy of this email is attached hereto as Exhibit E.

40. Other than as alleged above, Plaintiffs have received no responses to their FOIA Requests. No Defendant has, within the time limits prescribed by FOIA, notified Plaintiffs of the agency's determination whether to comply with the FOIA Requests or the reasons for that determination. 5 U.S.C. § 552(a)(6)(A)(i).

41. On information and belief, Defendants have failed to "make reasonable efforts to search" for records responsive to Plaintiffs' FOIA Requests. 5 U.S.C. § 552(a)(3)(C).

**D.    FAILURE TO PROVIDE FEE WAIVER**

42. In their FOIA Request, Plaintiffs sought a fee waiver of all costs incurred by Defendants in answering the request because the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government and [was] not primarily in the [Plaintiff's] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii).

43. As stated in the FOIA Requests, Plaintiffs will make any information that they receive as a result of the FOIA requests available to the public, including the press, at no cost. The issue of family separation and how children and families are treated at the border are of significant public interest in general, and the issue of how the federal government treats unaccompanied children who may have been separated from adult family members is of significant interest in particular.

44. Plaintiffs have undertaken this work in the public interest and not for any private commercial interest. The primary purpose of the FOIA Requests is to obtain information to further the public's understanding of federal immigration policies and practices. Access to this information is necessary for the public to meaningfully evaluate the costs and consequences of federal immigration policies. Thus, the agencies must

waive or reduce any fees because Plaintiffs do not have a commercial interest in the requested information and instead request this information to educate the public at large regarding the Defendant agencies' operations and activities. *See* 5 U.S.C. § 552(a)(4)(A)(iii). *See* Ex. A, at 11.

45. On July 19, 2021, Plaintiffs received an email from CBP stating that their request for a fee waiver "has been denied."

46. On July 21, 2021, Plaintiffs received a letter from CDC stating that Plaintiffs' request for a waiver "is granted" but stating also that "we may charge reduced fees instead of waiving all fees." The letter further stated that Plaintiffs "are considered a 'Commercial Requester'" that would "be charged for search, review and duplication fees."

47. On July 28, 2021, Plaintiffs received a letter from DHS stating that the agency "has determine that it will conditionally grant your request for a fee waiver" but that, "[i]n the event that your fee waiver is denied," the agency would "charge you for records pursuant to DHS FOIA regulations as they apply to non-commercial requesters."

48. On August 26, 2021, Plaintiffs received an email from ICE stating that that agency "shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to educational [*i.e.*, non-commercial] requesters."

49. To date, Defendants have failed to provide Plaintiffs a fee waiver, in violation of 5 U.S.C. § 552(a)(4)(A)(iii) (fees "shall" be waived if criteria are met); *see also* 6 C.F.R. § 5.11(k)(1) (fees "shall" be waived when "[d]isclosure of the requested information is in the public interest . . . and [d]isclosure of the information is not primarily in the commercial interest of the requester"); 28 C.F.R. § 16.10(k)(1) ("[r]equester[] may seek a waiver of fees by . . . demonstrating how disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester").

50. Because Defendants have failed to comply with the time limits specified in 5 U.S.C. § 552(a)(6) for their responses to the FOIA Requests, Defendants may not assess any search fees or duplication fees to Plaintiffs. 5 U.S.C. § 552(a)(4)(A)(viii)(I).

## FIRST CAUSE OF ACTION
### Violation Of 5 U.S.C. § 552(a)(6)(A)(ii) For Failure To Comply With Statutory Deadlines

1. Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

2. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) & B(i), Defendants had twenty or, at most, thirty business days from receipt of the FOIA Requests to notify Plaintiffs of Defendants' determination whether to comply with the requests and the reasons for that determination.

3. To date, Defendants have not provided any notice to Plaintiffs of their determination whether to comply with the FOIA Requests and the reasons for such determination.

4. Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i)-(ii).

5. Because Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i) & B(i), Plaintiffs have constructively exhausted their administrative remedies and are entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

6. Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly with[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

7. Under 5 U.S.C. § 552(a)(4)(A)(viii)(I), because Defendants have failed to comply with the time limits of 5 U.S.C. § 552(a)(6), they are barred from assessing any search or duplication fees to Plaintiffs.

**SECOND CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(3) For**
**Failure To Conduct An Adequate Search For Responsive Records**

8. Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

9. Pursuant to FOIA, 5 U.S.C. § 552(a), Plaintiffs have a statutory right to access the requested agency records.

10. Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(C), Defendants must "make reasonable efforts to search" for the information requested.

11. Upon information and belief, Defendants possess records responsive to Plaintiffs' FOIA Request that they have failed to produce without justification.

12. Upon information and belief, Defendants' failure to produce responsive records is a result of their failure to make reasonable efforts to search for the information requested.

13. Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly with[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

**THIRD CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(4)(A)(iii)**
**For Failure To Grant Waiver of Fees**

14. Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

15. Plaintiffs requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

16. Defendant CBP has denied Plaintiffs' request for a fee waiver, and none of the other Defendants has unconditionally granted that request.

17. Defendants' failure to grant Plaintiffs a waiver of fees associated with the production of responsive documents violates 5 U.S.C. § 552(a)(4)(A)(iii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment for Plaintiffs and award the following relief:

A. Injunctive relief, ordering Defendants to respond to the FOIA Requests by a date or dates certain, by (a) immediately notifying Plaintiffs whether they will comply with the FOIA Requests and the reasons for their determination; (b) conducting a search using "reasonable effort[s]" "for the purpose of locating those records which are responsive" to the FOIA Requests, as required by 5 U.S.C. §§ 552(a)(3)(C)-(D); (c) demonstrating that they have conducted an adequate search; (d) producing to Plaintiffs all non-exempt records or portions of records responsive to the FOIA Requests, as well as a Vaughn index of any records or portions of records withheld due to a claim of exemption.

B. Injunctive relief, ordering Defendants to grant Plaintiffs a waiver of all fees associated with the search for and production of the requested records;

C. An award to Plaintiffs of their costs and attorney fees reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

D. Such other and further relief as the Court may deem just and proper.

Dated: September 22, 2021

MUNGER, TOLLES & OLSON LLP
    BRADLEY S. PHILLIPS

JUSTICE ACTION CENTER
    KAREN C. TUMLIN
    ESTHER H. SUNG
    JANE BENTROTT

IMMIGRANT DEFENDERS LAW CENTER
    MUNMEETH SONI
    HANNAH COMSTOCK
    CAITLIN ANDERSON

By: */s/ Bradley S. Phillips*
    Bradley S. Phillips

Attorneys for Plaintiffs
JUSTICE ACTION CENTER and
IMMIGRANT DEFENDERS LAW CENTER